Hillsborough–southern judicial district
No. 2002-209

## IN RE JUVENILE 2002-209

Argued: March 5, 2003
Opinion Issued: June 9, 2003

*Judy T. Constantian*, of Merrimack, by brief and orally, for the petitioner.

*Gottesman and Hollis, P.A.*, of Nashua (*Paul M. DeCarolis* on the brief and orally), for the respondent.

BRODERICK, J. The petitioner, Colleen M., appeals the decision of the Superior Court (*Hampsey*, J.) dismissing a petition filed by the New Hampshire Division for Children, Youth and Families (DCYF) against the respondent, Thomas L., alleging that he physically abused their three-year-old daughter. We affirm.

The petitioner and the respondent were married in May 1995, and their child was born in February 1996. In October 1998, they were divorced. The divorce decree contained a restriction prohibiting either party from moving more than thirty miles from Nashua due to custody arrangements. In March 1999, the petitioner sought the respondent's consent to her proposed relocation beyond the thirty-mile radius and alternatively suggested that he consider relocating. The respondent refused.

In early April 1999, DCYF filed a petition for abuse and neglect against the respondent after the petitioner complained that he had slapped their child, causing facial bruises. *See* RSA 169-C:3, II(b), (d) (2002). The respondent denied the allegations and asserted that the petitioner fabricated her claims of abuse as a tactic aimed at removing the geographic restrictions imposed on her by the divorce decree.

In February 2000, the trial court conducted a pretrial hearing during which it granted the respondent's motion to compel discovery of the child's counseling and medical records. The trial court subsequently dismissed the case in July 2000, and the petitioner filed an appeal with this court in which DCYF elected not to participate. Following a remand in December

2001, a trial was scheduled for March 6, 2002. In mid-February, almost three weeks prior to the trial, the respondent filed a motion *in limine* seeking to exclude the medical and counseling records and the testimony of one of the child's therapists because DCYF had failed to comply with the trial court's earlier discovery order. The court granted the motion. At trial, the petitioner, a DCYF social worker and the investigating police officer testified. At the conclusion of the trial, the respondent moved to dismiss the petition, which the trial court granted. This appeal, in which DCYF has not joined, followed.

The petitioner argues, among other things, that the trial court erred by: (1) excluding the child's medical and counseling records and the testimony of one of the child's therapists; (2) requiring expert testimony to prove that the child's purported regressive emotional behavior was causally related to the claimed abuse; and (3) dismissing the petition.

Initially, the petitioner argues that the trial court erred by excluding the records and the therapist's testimony because, under RSA 169-C:12-b (2002), the records had to be provided only five days prior to trial, which they were. The respondent argues that the statute merely provides for a minimum disclosure requirement and that the trial court was free to order earlier discovery. We agree. Proceedings under RSA chapter 169-C are civil in nature and, therefore, we look to the standards guiding such proceedings. *See In re Samantha L.*, 145 N.H. 408, 411 (2000). The trial court has broad discretion in the management of discovery and admissibility of evidence. *Id.* We will not reverse a trial court's ruling unless it represents an unsustainable exercise of discretion that was clearly untenable or unreasonable to the prejudice of the petitioner's case. *Id.*; *In re Brittany S.*, 147 N.H. 489, 494 (2002).

RSA 169-C:12-b states, in pertinent part, that:

> All reports, evaluations and other records from the department of health and human services [and] counselors . . . in proceedings under this chapter shall be filed with the court and all other parties at least 5 days prior to any hearing. . . . Failure to comply with the provisions of this section shall not be grounds for dismissal of the petition.

The statute mandates when records *must* be filed with the trial court and made available to the parties. It does not preclude the trial court from granting a discovery motion seeking an earlier disclosure. In this case, the respondent filed a motion to compel discovery. DCYF failed to supply the records in a timely manner and the respondent moved to prohibit their introduction and to preclude any testimony about them. The court

concluded that its discovery order had not been complied with and granted the requested relief.

■ DCYF stipulated that the therapist would be testifying only as a fact witness concerning statements the child allegedly made about the claimed abuse, statements which were apparently contained in the excluded records. There were, however, other witnesses who testified about similar statements from the child. In excluding admission of the challenged records and the related testimony of the therapist because of discovery violations, the trial court acted well within its discretion.

The petitioner next argues that the trial court erred by requiring expert testimony to prove that the alleged regressive emotional behavior displayed by the child was causally related to the claimed abuse. During the hearing, the trial court heard testimony from the mother that after she observed the bruises on her child's face, the child's behavior regressed from "a potty-trained three-year-old to a baby back in diapers." When the petitioner attempted to testify that her child's regressive behavior was caused by the alleged physical abuse, the trial court did not permit it.

The petitioner contends that *In re Gina D.*, 138 N.H. 697 (1994), "specifically prohibits an expert [from expressing an] opinion that certain behaviors are indicative of abuse." *In re Gina D.* does not stand for the proposition that the petitioner advances. In that case, we disallowed opinion testimony from the child's therapist because she relied upon principles and techniques of diagnosing sexual abuse that had not been generally accepted by behavioral scientists. *Id.* at 701-04. We explicitly cautioned, however, that the exclusion of the expert's testimony as unreliable should not be interpreted to "preclude all opinion testimony from psychologists or therapists in abuse and neglect proceedings." *Id.* at 704.

The petitioner also argues that by requiring expert testimony, the trial court ignored our holding in *In re Craig T.*, 144 N.H. 584, 587-88 (1999), where lay eyewitness testimony was accepted to demonstrate the effects that physical abuse, suffered by one young sibling in the presence of another, had on their mental and emotional health. The facts of that case are quite different from those before us.

There, the father was observed shaking and violently hitting his three-year-old son in the head while the child's mother and five-year-old sister, as well as a number of bystanders, watched the assault. *Id.* at 585-88. Several adult witnesses were so upset that they felt compelled to call the police. *Id.* at 588. The children's mother did nothing to stop the abuse nor did she try to shield her daughter from witnessing it. *Id.* Under those circumstances, we held that testimony from a social worker that the son

was hit by his father "all the time" and that the mother essentially denied the abuse and was unwilling to protect her children was sufficient evidence to show, without the need for expert testimony, that there would be a serious impact on the children's physical, mental and emotional health. *Id.* at 587-88.

■ In this case, the claimed abuse was not witnessed and the evidence as to how or under what circumstances the child received the alleged bruises on her face was incomplete. Although the mother reported she found bruising, neither the social worker who interviewed the child nor the police officer who investigated the reported abuse recounted seeing any facial bruising. On this record, whether the alleged abuse caused regressive behavior was beyond the ken of the average layperson and the trial court was correct to exclude the mother's opinion testimony. While expert testimony drawing a causal connection might not have been possible, the mother's proposed testimony was clearly inadmissible.

Finally, the petitioner argues that the trial court erred in dismissing the abuse and neglect petition on the basis that DCYF had failed to establish that the child suffered an injury, and that even if the claimed bruises were considered injuries, there was no evidence that they were caused intentionally or by other than accidental means. In reviewing the trial court's decision on a motion to dismiss, at the close of all the evidence in a non-jury trial, we will uphold its findings and rulings unless they are unsupported by the evidence or tainted by error of law. *See id.* at 585.

RSA 169-C:3, II(b) and (d) provide that an abused child is one "who has been: ... (b) [i]ntentionally physically injured; or ... (d) [p]hysically injured by other than accidental means." Subsection II(b) requires a *mens rea* to cause physical injury. The record before us supports the trial court's finding of no intentional conduct. We turn, therefore, to subsection II(d). The abuse petition charged that the child suffered "physical injury" and that her health "suffered or [was] very likely to suffer serious impairment." We have previously defined the type of evidence that is needed to establish "physical injury." In *Petition of Jane Doe*, 132 N.H. 270, 277 (1989), we held that RSA 169-C:3, II(d) "require[d] more than proof of two incidents ... which resulted in a swollen lip and a bruise on the head." We observed that if interpreted literally, the statute would include "minor injuries ... that do not threaten the well-being of the child." *Id.* As we held in that case:

> We do not lightly interpret a statute so as to impose a requirement that does not appear on its face. Nevertheless, given the facts of the case, and reviewing the definition of child abuse in light of the statute as a whole, we conclude that a proper finding

of child abuse under RSA 169-C:3, II(d) ... must include a determination of whether the alleged abusive act was committed under circumstances indicating harm or threatened harm to the child's life, health, or welfare.

*Id.*

Although the principal purpose of the Child Protection Act is to protect "children whose life, health or welfare is endangered," it is also intended "to establish a judicial framework to protect the rights of all parties involved in the adjudication of child abuse or neglect cases." RSA 169-C:2, I (2002). We agree with the trial court that in this case the evidence introduced was insufficient to establish that the child suffered a physical injury or was harmed within the meaning of the statute.

In this case, there was no evidence to establish that the alleged abuse, which, if the mother's testimony is accepted, caused faint facial bruising, threatened harm to the child's life, health or welfare. The bruises, if they existed, were very slight. The father had no history of abuse. The trial court could well have found that the minor bruises allegedly suffered by the child in this case were not a threat to her well-being and were not injuries contemplated by RSA 169-C:3, II(d). The petitioner points to hearsay evidence that the child was angry with her father and made statements that "Daddy did it," referring to the bruises. There are many possible explanations for the child's accusations, including anger over the separation from her father. As the trial court suggested, "We don't know what happened, how it happened, [or] under what circumstances [it happened]. The fact that the child said, 'Dad did this,' or 'Dad was mean,' or she was angry does not make a bruise intentional or other than accidental." Accordingly, based on the record before us, we find no error in the trial court's conclusion that the petitioner failed to carry her burden of proof that the child was harmed or is likely to suffer harm in the future, as contemplated by RSA 169-C:3, II(d).

We have considered the petitioner's remaining arguments and find them to be without merit. *See Vogel v. Vogel,* 137 N.H. 321, 322 (1993).

*Affirmed.*

BROCK, C.J., and NADEAU and DUGGAN, JJ., concurred.